J-S27001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 464 EDA 2020 |

Appeal from the Decree Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000688-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: W.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.B., MOTHER | : | |
| | : | |
| | : | |

No. 466 EDA 2020

Appeal from the Order Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000068-2017

BEFORE: SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.: **FILED JULY 17, 2020**

J.B. ("Mother") appeals from one decree and one order that were entered in the Juvenile Division of the Philadelphia County Court of Common Pleas on January 10, 2020. The decree entered at trial court docket number

---

[*] Former Justice specially assigned to the Superior Court.

CP-51-AP-0000688-2018 granted the Philadelphia Department of Human Services' ("DHS") petition to involuntarily terminate Mother's parental rights to her son, W.A.B., ("Child"),[1] pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2]  The order entered at trial court docket number CP-51-DP-0000068-2017 changed Child's permanency goal to adoption pursuant to 42 Pa.C.S. § 6351.[3]  After careful review, we affirm both the order changing the permanency goal and the decree involuntarily terminating Mother's parental rights.

The trial court set forth the relevant facts and procedural history of this matter as follows:

> Child was removed from Mother's care and placed into DHS custody due to Child testing positive for marijuana at birth, and for concerns regarding Mother's mental health history with her other child already in care.  At the adjudicatory hearing held on January 17, 2017, Child was adjudicated dependent based upon 42 Pa.C.S. § 6302(1).  An initial permanency hearing was held on March 6, 2017, at which time the permanency goal for Child was

---

[1] Child was born in December of 2016.

[2] The court entered a separate decree terminating the parental rights of Child's putative father.  The putative father did not file an appeal.

[3] On February 4, 2020, Mother properly filed an appeal from the decree involuntarily terminating her parental rights and a separate appeal from the order changing Child's permanency goal to adoption.  **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (requiring the filing of separate notices of appeal, where more than one order resolves the issue, arises on more than one docket, or relates to more than one judgment) (citing Pa.R.A.P. 341).  On February 12, 2020, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.

reunification with Mother. Additional permanency hearings were held between 2017 and 2019.[4]

On August 22, 2018, DHS filed petitions to involuntarily terminate Mother's parental rights to [Child] pursuant to 23 [Pa.C.S.] §§ 2511(a)(1), (2), (5), (8) and (b) and to change [Child's] permanency goal to adoption.[2] This [c]ourt conducted a combined termination and goal change hearing (collectively the "TPR") hearing on January 10, 2020.[5] At the TPR hearing, the Community Umbrella Agency ("CUA") case manager, Jessica Law, testified that [Child] was removed from Mother's care approximately three years ago. [Child] had been in his current foster home for approximately three years, since his discharge from the hospital. Ms. Law further testified that Mother's single case plan objectives throughout the life of the case were as follows: (1) comply with CUA services, (2) continue mental health treatment and medication management, (3) attend substance abuse treatment, (4) obtain appropriate housing, and (5) comply with supervised visitation. Regarding Mother's compliance with her objectives, Ms. Law testified that Mother was non-compliant. Most notably, Ms. Law testified that Mother was non-compliant with her drug and alcohol and mental health objectives. She stated that Mother failed to verify that she successfully completed a drug and alcohol program or consistently attended a program. Additionally, Mother only attended one [c]ourt ordered drug screen. Ms. Law also stated that Mother failed to verify her engagement with mental health treatment. She testified that

_____

[4] Permanency review hearings were held in March 2017, June 2017, August 2017, January 2018, March 2018, and August 2019. Where the court made findings regarding Mother's compliance, Mother's compliance was either minimal or moderate. *See* Permanency Review Orders, 3/6/17, 6/5/17, 8/8/17, 1/4/18, 3/8/18, 8/15/19.

[5] At the hearing, Child was represented by Lawrence O'Connor, Esquire, as "child advocate" or legal counsel, and Maureen Pié, Esquire, as guardian *ad litem*. However, Attorney O'Connor testified at the hearing that he had met with Child and that Child was too young to understand the adoption process and express a preference. N.T., 1/10/20, at 26; *see In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) (noting that in contested termination proceedings, there is no conflict between a child's best and legal interests where a two-year old and a three-year-old child were too young to express a preferred outcome with respect to the proceedings).

Mother has several mental health diagnoses, including paranoid schizophrenia and bipolar disorder. Ms. Law further testified that Mother's Parenting Capacity Evaluation [("PCE")] recommended that Mother comply with mental health and drug and alcohol treatment. Due to Mother's noncompliance with her mental health and drug and alcohol objectives, Ms. Law stated that she believed it would be unsafe for Child to have unsupervised contact with Mother.

> [2] DHS filed additional petitions to involuntarily terminate Mother's parental rights on June 27, 2019.

With respect to Mother's visitation with Child, Ms. Law testified that Mother was to attend supervised visitation at the agency. However, Mother attended only 11 of 156 offered visits over the previous three years. Ms. Law also stated that Mother had only seen Child twice during the seven months prior to the TPR hearing. Additionally, Mother was referred to the Achieving Reunification Center ("ARC") to obtain housing but was unsuccessfully discharged from ARC.

Ms. Law indicated that it would be in Child's best interest to terminate Mother's parental rights and to change Child's permanency goal to adoption, as Mother was no closer to achieving reunification than she was three years prior. Her testimony demonstrated [Child] shares his primary parent-child bond with his foster mother, with whom he has resided for three years. [Ms. Law] stated that [Child] looks to his foster mother for love, safety, stability and support, and she meets all his general and medical needs. In contrast, Ms. Law stated that Mother had not been involved in meeting any of Child's needs throughout the previous three years. Additionally, she indicated that Child did not appear to be harmed by Mother's failure to visit for substantial periods of time. Ms. Law further testified that Child would not be harmed if Mother's parental rights were terminated.

At the TPR hearing, Mother disputed the number of attended visits and claimed Child was not brought to several scheduled visits. Mother also testified that she had housing that was appropriate for Child to visit. Additionally, she testified that she completed a program for mental health and substance abuse in 2019. She also stated that she completed several parenting classes. Additionally, Mother testified that the Clinical Evaluation Unit [("CEU")] informed her that she did not need to complete an assessment or

attend random screens. Mother acknowledged that she was told to provide documentation for her programs and classes at a prior termination hearing for another child; however, she failed to do so at this TPR hearing.

At the conclusion of the hearing, this [c]ourt issued a decree involuntarily terminating Mother's parental rights under 23 [Pa C.S.] §§ 2511(a)(1), (2), (5) and (8) and finding, in accordance with 23 [Pa.C.S.] § 2511(b), that such termination best serve the developmental, physical, and emotional needs and welfare of [Child].

Trial Court Opinion, 2/28/20, at 1-4 (internal citations to the record omitted, footnote in original).

On February 4, 2020, Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on February 28, 2020.

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 [Pa.C.S. §] 2511(a)(1) where Mother presented evidence that she made efforts to perform her parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 [Pa.C.S. §] 2511(a)(2) where Mother presented evidence that she made efforts to remedy any incapacity or neglect[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 [Pa.C.S. §] 2511(a)(5) and (a)(8) where the evidence showed that [Child] was removed from [Mother], however, Mother presented evidence that the conditions that existed at the time of removal have been remedied[?]

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 [Pa.C.S. §] 2511(b) where evidence was presented that Mother has a positive parental bond with [Child] that would be detrimental to sever[?]

Mother's Brief at 8.

Although Mother filed separate appeals, she now challenges only the involuntary termination of her parental rights. Mother's statement of questions involved lists issues solely related to termination; she has failed to present any challenge relative to the order changing Child's permanency goal to adoption. Mother's Brief at 8, 14-23. As a result, we conclude that Mother has waived any challenge to the change of the permanency goal. *See Krebs v. United Refining Co.*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); *see also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (noting that where an appellate brief does not provide discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, the claim is waived). Accordingly, we affirm the order changing Child's permanency goal to adoption, and we address only the order terminating Mother's parental rights.

We review Mother's issues according to the following standard.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported

by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We must agree with the trial court as to only one subsection of 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified

record supports the decree pursuant to Section 2511(a)(2)[6] and (b), which

provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> \* \* \*

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> \* \* \*

> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

This Court has explained that the moving party must produce clear and

convincing evidence with respect to the following elements to terminate

---

[6] In light of our disposition relative to Section 2511(a)(2), we need not consider Mother's arguments with respect to Sections 2511(a)(1), (5), and (8).  **B.L.W.**, 843 A.2d at 384.

parental rights pursuant to Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to 23 Pa.C.S. § 2511(a)(2), parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.***, 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** Further, the grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity that cannot be remedied are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***Id.*** at 337.

With respect to 23 Pa.C.S. § 2511(b), this Court has stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention

to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

In this appeal, Mother argues that there was no evidence of present incapacity, as she was actively working toward reunification by complying with all of her goals and objectives. Mother's Brief at 18-19. Specifically, Mother contends that she completed a PCE and that at the time of the hearing, she had followed the recommendations therein, which included completing drug, alcohol, and mental health treatment, as well as some parenting classes. *Id.* The record belies Mother's claim.

As to this issue, the trial court observed as follows:

The evidence established that "incapacity" and "refusal" under [Section] 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to care for [Child]. Mother failed to cooperate with CUA throughout the life of the case, including participating in substance abuse and mental health treatment. The testimony demonstrated that Mother had failed to address her significant mental health issues throughout the three years [Child] was in foster care, despite her documented mental health diagnoses. Additionally, Mother has failed to address her substance abuse issues, which is significant as Child tested positive for marijuana at birth. Ms. Law testified that Mother's inability or unwillingness to address these issues has created safety concerns regarding any supervised contact with Child. Mother also failed to establish any stability in her life regarding housing, as she was discharged from the [Achieving Reunification Center] unsuccessfully. Moreover, the evidence established that

"neglect" existed given that Mother had not visited [Child] more than eleven times in three years. This [c]ourt found that Mother's failure to comply with CUA and consistently visit [Child] has left [Child] without essential parental care, and the cause of such neglect, refusal, and continuing incapacity will not be remedied by Mother.

Trial Court Opinion, 2/28/20, at 7-8 (internal citations omitted).

Our review supports the trial court's findings. Ms. Law testified that at the time of the hearing, Child was three years old and had been in care his entire life. N.T., 1/10/20, at 5-6. Child originally was adjudicated dependent because he tested positive for marijuana at birth, lacked stable housing, and Mother had significant mental health issues, which included diagnoses of schizophrenia and bipolar disorder that led to her other children's placement. *Id.* Mother was informed that she needed to comply with her CUA objectives, which included: continuing mental health treatment and medication management; attending substance abuse treatment; obtaining appropriate housing; and complying with supervised visits. *Id.* at 8. As of the date of the hearing, Mother had provided verification of none of these objectives, despite repeated referrals for services. *Id.* at 9-11.

Ms. Law testified that of 156 offered visits over three years, Mother attended only eleven, and two of those visits occurred in the seven months prior to the hearing on the petition to terminate her parental rights. N.T., 1/10/20, at 11-12. Although Mother did sit for the PCE, she did not follow the recommendations given in the evaluation. *Id.* at 12. Due to Mother's mental

- 11 -

health and housing instability, it remained unsafe for Child to reunify with Mother. *Id.* at 10-12.

Mother disputed Ms. Law's testimony, particularly with regard to visitation, claiming that she had "a lot of successful visits." N.T., 1/10/20, at 28. Mother claimed that she attended visits every week, but Child was never brought to the visits. *Id.* at 27-28. Mother also averred that despite Ms. Law's testimony to the contrary, CEU had informed her she did not need to take any assessment. *Id.* at 12-34. Mother also claimed that she always provided documentation of her compliance with her objectives to her caseworker, but that this caseworker did not have the paperwork in court. *Id.* at 34. Mother asserted her housing was appropriate for Child to "visit" but admitted it was not appropriate for Child to stay long term. *Id.* at 30. However, Mother did not provide any additional documentation to the court at the hearing regarding housing or completion of her CUA objectives. The trial court did not find Mother's testimony credible. *Id.* at 39; Trial Court Opinion, 2/28/20, at 8.

Accordingly, Ms. Law's testimony demonstrated that Mother's repeated and continued incapacity continuing since 2017 has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. In addition, Ms. Law's testimony supports the court's finding that the causes of Mother's incapacity cannot or will not be remedied.

Thus, we affirm the decree terminating Mother's parental rights pursuant to Section 2511(a)(2).

With respect to 23 Pa.C.S. § 2511(b), Mother argues that the termination of her parental rights would have a detrimental effect on Child and would not serve Child's physical and emotional needs and welfare. Mother's Brief at 22. Specifically, she contends that no evidence was presented regarding the visits and interactions Mother and Child had, so that it was impossible to determine the quality of the bond. *Id.* Again, the record belies Mother's contentions.

The trial court observed:

In the instant matter, this [c]ourt determined that [Child] would not suffer irreparable harm if Mother's parental rights were terminated. There was compelling testimony that [Child] would not suffer harm if Mother's parental rights were terminated; however, [Child] would suffer significant harm if he was separated from his foster mother. Mother failed to offer any evidence establishing the existence of a parent-child bond. The testimony demonstrated that [Child's] primary bond is with his foster parent. [Child] is also significantly bonded with his foster siblings and foster mother's partner. Additionally, the testimony demonstrated [Child's] foster mother meets all his general and developmental needs. Moreover, [Child] seeks care, comfort, love and stability from his foster mother, not Mother. In determining that termination would best serve the needs and welfare of [Child], this [c]ourt considered that Mother had not been able to meet [Child's] emotional, physical, and developmental needs, or provide [Child] with a healthy, safe environment for almost three years prior to the TPR hearing.

Trial Court Opinion, 2/28/20, at 11-12.

- 13 -

We reiterate that "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d at 762-763.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)). In addition, our Supreme Court has stated that "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. Moreover, this Court directed that in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed, "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail ... the result, all too often, is catastrophically maladjusted children." *Id.*

Ms. Law testified that Child has lived in a kinship foster home with his maternal aunt and her partner since he was taken into care. *Id.* at 13. Child calls maternal aunt "Mom" and shares a parent/child bond with her. *Id.* at 13-14. Child is also close to foster mother's partner, whom he calls "Dad,"

- 14 -

and their two biological children. ***Id.*** at 13-14. Foster mother provides Child with all of the love, safety, stability, and support that he needs, and she has been meeting all of his needs for the last three years. ***Id.*** at 15. Ms. Law testified that Child has been in care for three years and requires permanency, and Mother is no closer to achieving reunification than she was at the inception of the case. ***Id.*** at 17. It is in Child's best interest for Mother's rights to be terminated. ***Id.***

Mother attended eleven of 156 offered visits with Child. N.T., 1/10/20, at 11-12. Child does not appear adversely affected when Mother does not visit him for long periods of time. ***Id.*** Mother has not been meeting any of Child's needs. ***Id.*** Although Mother argues that no testimony was presented regarding the quality of her visits and whether there was a parent/child bond, her argument is unavailing. As this Court has observed, it is reasonable to assume there is no bond where there is no evidence of a bond. ***In re K.Z.S.***, 946 A.2d at 762-763. It is notable, even in Mother's own testimony, she does not mention any bond or feelings of love and affection that Child may have for her. N.T., 1/10/20, at 27-35. Based upon the evidence presented, including Mother's own testimony, it is reasonable to conclude that a parent/child bond does not exist between Mother and Child; accordingly, the termination of Mother's parental rights would not result in any harm to Child. ***In re K.Z.S.***, 946 A.2d at 762-763.

After review, we conclude that the record supports the termination of Mother's parental rights pursuant to Section 2511(b). The evidence clearly and convincingly confirmed that termination will best serve Child's developmental, physical, and emotional needs and welfare. Therefore, we affirm the order terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

For the reasons set forth above, Mother waived any challenge to the order changing Child's permanency goal to adoption; therefore, we affirm that order. Moreover, we conclude that Mother is entitled to no relief with respect to the decree terminating her parental rights, and we affirm the decree as well.

Order changing permanency goal affirmed. Decree terminating parental rights affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/20